UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DARRELL GOSTON,

                                    Plaintiff,

       v.                                            9:08-CV-478 (FJS/ATB)

RICHARD POTTER,

                                    Defendant.
_____

DARRELL GOSTON
Plaintiff, *pro se*
C. HARRIS DAGUE, Asst. Attorney General for Defendant

ANDREW T. BAXTER, Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

Presently before the court are two letter-motions filed by plaintiff to "substitute" parties as defendants in this action. (Dkt. Nos. 45, 46). Counsel for defendant Potter has responded in opposition to the motions. (Dkt. No. 48). For the following reasons, plaintiff's motion to "substitute" will be denied. To the extent that plaintiff's second motion (Dkt. No. 46) may be read as a motion to amend, the court will recommend denial based on futility, and this court will recommend dismissing this action in its entirety.

**I.**    **Background and Procedural History**

Plaintiff brought this civil rights action, challenging two disciplinary proceedings held against him. (Dkt. No. 1). This case was complicated by plaintiff filing a petition for habeas corpus raising identical claims. *See Goston v. Woods*, 9:08-CV-462 (NAM/GHL). *Goston v. Woods* was dismissed on July 17, 2008 by Chief Judge Norman A. Mordue, after a Report-Recommendation by Magistrate Judge

George H. Lowe, because plaintiff never responded to Magistrate Lowe's order to state whether plaintiff lost good time as a result of the Tier III disciplinary hearing.[1] (Dkt. Nos. 5, 6 in 9:08-CV-462).

On August 27, 2008, defendant Potter filed his first motion for judgment on the pleadings in this case. (Dkt. No. 15). The *only* basis for defendant's motion was the lack of personal involvement in the alleged due process violation.[2] (Dkt. No. 15-1; Def.'s Mem. of Law). In an affidavit, responding to the defendant's motion, plaintiff specifically stated that defendant Potter was the hearing officer in **both** the Tier II and the Tier III hearings. (Dkt. No. 18 at 4). Based, in part, on this representation, Magistrate Judge Di Bianco[3] recommended that defendant Potter's motion for judgment on the pleadings be denied. (Dkt. No. 19).

Magistrate Judge Di Bianco also stated that if plaintiff lost good time as the result of these disciplinary hearings, the plaintiff would have to show that the disciplinary hearings had been reversed prior to filing a section 1983 action based on alleged due process violations during those hearings. (Dkt. No. 19 at 5, 8). In his complaint, plaintiff did not claim that he lost good time as the result of the Tier III

---

[1] A petition for habeas corpus would be the appropriate method of challenging a disciplinary hearing after which plaintiff lost good time, when a decision in the inmate's favor would necessarily affect the duration of his confinement, and after the inmate exhausted his state court remedies. *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).

[2] Although plaintiff had listed defendant Potter in the caption of the complaint, he was not mentioned anywhere in plaintiff's statement of facts. (Dkt. No. 1).

[3] This case was initially assigned to Magistrate Judge Di Bianco and was assigned to me following Judge Di Bianco's retirement on January 4, 2010. (Dkt. No. 37).

hearing. (Dkt. No. 19 at 8). In plaintiff's response to defendant's motion for judgment on the pleadings, he alleged *for the first time in either action*, that he lost six months of good time as the result of the Tier III hearing. *Id.* at 3 (citing Dkt. No. 17). Magistrate Judge Di Bianco stated that

> [t]he court does not wish to make the mistake of recommending dismissal *sua sponte*, and then determining that plaintiff did not lose good time ***as a result of these charges***. Thus, at this time, the court will not recommend dismissal, but will merely note that if plaintiff lost good time as he says, the case will be subject to dismissal pursuant to *Edwards v. Balisok,* [520 U.S. 641 (1997)].

*Id.* at 9 (emphasis in original).

After the Report-Recommendation was filed, defense counsel filed a letter-motion requesting that his motion for judgment on the pleadings be "withdrawn." (Dkt. No. 20). Counsel stated that in view of Magistrate Judge Di Bianco's statement that, if plaintiff lost good time as a result of the Tier III hearing, the case would be subject to dismissal based on *Edwards*, defendant wished to withdraw the motion for judgment on the pleadings so that he could file a summary judgment motion. *Id.* Defense counsel was instructed to file his papers as "Objections" to the Report-Recommendation. (Text Order dated Nov. 14, 2008). Defense counsel filed his "Objections" and included as exhibits, the disciplinary records in question, showing that plaintiff lost six months of good time as a result of the Tier III hearing in question. (Dkt. No. 21).

Prior to Senior Judge Scullin's ruling on the Report-Recommendation, plaintiff

moved to amend his complaint. (Dkt. No. 22). Plaintiff alleged that defendant Potter was only the hearing officer for the Tier III hearing, rather than being the hearing officer for both the Tier II and Tier III hearings, as plaintiff had stated in his response to the defendant's motion for judgment on the pleadings. (*Compare* Dkt. No. 18 at 4 *with* Dkt. No. 22). On April 27, 2009, Senior Judge Scullin issued his Memorandum Decision and Order, adopting, as modified, Magistrate Judge Di Bianco's Report-Recommendation. (Dkt. No. 23). Senior Judge Scullin denied plaintiff's motion to "stay the action," and denied defendant Potter's motion for judgment on the pleadings. (Dkt. No. 23). In that Order, Senior Judge Scullin also ordered plaintiff to advise the court whether he would waive all claims relating to good time in order that he might proceed with his claims challenging only the sanctions that affected the conditions of his confinement,[4] *i.e.* the time that he was confined in the Special Housing Unit (SHU) as a result of the Tier III hearing.[5] *Id.*

On May 18, 2009, plaintiff filed the waiver discussed in Senior Judge Scullin's Order, allowing this civil rights action to proceed. (Dkt. No. 24). On May 19, 2009, in accordance with plaintiff's waiver, Senior Judge Scullin ordered the dismissal of "all claims set forth in the complaint relating to disciplinary sanctions imposed on Plaintiff

---

[4] *See Peralta v. Vasquez*, 467 F.3d 98, 103 (2d Cir. 2006) (allowing plaintiff to proceed with a challenge to his disciplinary hearing if he waives "once and for all" all claims relating to sanctions affecting the duration of his confinement).

[5] Senior Judge Scullin stated that defense counsel had submitted a great deal of documentation regarding plaintiff's disciplinary hearings, and considered the information only to the extent that it was integral to the complaint or incorporated by reference thereto. (Dkt. No. 23 at 5-6) (citing *Sira v. Morton*, 380 F.3d 57, 66 (2d Cir. 2004) (quotation omitted). Based on this review, Senior Judge Scullin confirmed that plaintiff lost six months of good time as the result of the Tier III hearing. *Id.*

4

which affect the duration of his confinement . . . ." (Dkt. No. 25 at 2).

Magistrate Judge Di Bianco granted plaintiff's motion to amend his complaint on November 12, 2009. (Dkt. No. 33). The amended complaint was filed on November 12, 2009. (Am. Compl., Dkt. No. 34). A Mandatory Pretrial Discovery and Scheduling Order was issued on December 16, 2009, setting a discovery deadline of April 14, 2010 and a dispositive motion deadline of July 13, 2010. (Dkt. No. 36). Defense counsel filed a notice of compliance with the Mandatory Pretrial Discovery Order Production of Documents. (Dkt. No. 42). A Suggestion of Death for defendant Potter was filed on July 9, 2010, and at the same time, this court granted defense counsel's request for a stay of the dispositive motion deadline. (Dkt. Nos. 43, 44 and Text Order dtd. July 9, 2010).

## II.     Substitution of Parties

### A.     Legal Standard

Rule 25 of the Federal Rules of Civil Procedure provides that if a party dies, and the claim is not extinguished by the party's death, the court may order substitution of the proper party. FED. R. CIV. P. 25(a)(1). A motion for substitution may be made by ***any party***, and the motion must be served on the parties as provided in Rule 5 and served upon non-parties as one would serve a summons pursuant to Rule 4. *Id.* Rule 25 further provides that unless a motion for substitution is made within 90 days after the death is "suggested upon the record by service of a statement of the fact of the death as provided [in the rule] for the service of the motion," the action will be dismissed as against the deceased party. *Id.*

The rule makes it clear that any party may make a motion for substitution, but as soon as a "suggestion of death" is filed, the motion for substitution must be made within 90 days. *Id.* The running of the 90 days commences with the "proper suggestion of death." *George v. United States*, 208 F.R.D. 29, 31 (D. Conn. 2001) (citing *Pastorello v. City of New York*, 95 Civ. 470, 2000 WL 1538518, at *2 (S.D.N.Y. Oct. 18, 2000)). In *George v. United States*, the court cited two affirmative steps required to trigger the 90-day time limitation. *Id.* First, death must be "formally" suggested "upon the record." *Id,* (citing *Barlow v. Ground*, 39 F.3d 231, 233 (9th Cir. 1994)). Second, the "suggesting party" must serve other parties and non-party successors or representatives of the deceased with a suggestion of death in the same manner as required for service of the motion to substitute. *Id.* Although existing parties may be served pursuant to FED. R. CIV. P. 5, non-parties must be served as if they were being served with a summons pursuant to FED. R. CIV. P. 4. *Id.*

**B.     Application**

In this case, defense counsel filed the suggestion of death on July 9, 2010. (Dkt. No. 43). Defense counsel served plaintiff with the suggestion of death, but it does not appear that the successors or representatives of the deceased party were served with the document. Plaintiff, therefore, has until October 7, 2010 to move for substitution of parties. On August 6, 2010, plaintiff attempted to "substitute" David Rock as a defendant "in place of Richard Potter." (Dkt. No. 45). On August 25, 2010, plaintiff requested the opportunity to further "amend" his complaint to substitute Lieutenant Sawyer and Deputy Superintendent John Doe for "the original defendant." (Dkt. No.

46).

Even assuming that plaintiff's submissions were sufficient "motions," plaintiff has understandably misunderstood the meaning of Rule 25. The meaning of a "proper party" under Rule 25 "is either a representative of the decedent's estate or the successor of the deceased." *Shapiro v. United States*, No. 07 Civ. 161, 2008 WL 4302614, at *1 (S.D.N.Y. Sept. 17, 2008) (citations omitted). Under New York law, to qualify as a "representative" of the decedent's estate, the individual must have received letters to administer the estate of the decedent. *Id.* (citing *Graham v. Henderson*, 224 F.R.D. 59, 64 (N.D.N.Y. 2004). To qualify as a "successor," the individual is considered a proper party if the person is a distributee of the estate. *Id.* (citing *inter alia Hardy v. Kaszycki & Sons Contractors, Inc.*, 842 F. Supp. 713, 716-17 (S.D.N.Y. 1993)).

David Rock is the Superintendent of Great Meadow Correctional Facility. (Dkt. No. 46 at 1). It is unclear from the plaintiff's submission who proposed defendants Sawyer[6] and Doe are; however, it is clear that none of these defendants are representatives of defendant Potter's estate, nor are they distributees of the estate. None of the new defendants proposed by plaintiff is a "proper party" for substitution. Plaintiff has not yet requested the substitution of the proper party. Thus, to the extent that plaintiff is asking to "substitute" these parties for defendant Potter, these "motions" are denied.

---

[6] Based upon documents provided by defense counsel in his "objections" to Judge Di Bianco's Report-Recommendation, proposed defendant Sawyer appears to be the hearing officer assigned to the Tier II hearing at issue in this case. (Dkt. No. 21-1 at 1).

### III. Motion to Amend

As a *pro se* party, plaintiff may have been confused by the concept of "substitution" of parties. The court will also interpret plaintiff's submissions as motions to amend his complaint to add defendants in addition to, not in place of, defendant Potter.

### A. Legal Standard

Fed. R. Civ. P. 15(a) provides that the Court should grant leave to amend "freely . . . when justice so requires." Generally, the court has discretion whether or not to grant leave to amend a pleading. *Foman v. Davis*, 371 U.S. 178, 182 (1962). When exercising its discretion, the court must examine whether there has been undue delay, bad faith, or dilatory motive on the part of the moving party. *Evans v. Syracuse City School District*, 704 F.2d 44, 46 (2d Cir. 1983) (citing *Foman*, 371 U.S. at 182). The court must also examine whether there will be prejudice to the opposing party. *See, e.g., Ansam Associates Inc. v. Cola Petroleum, Ltd.,* 760 F.2d 442, 446 (2d Cir.1985) (permitting proposed amendment would be especially prejudicial once discovery was completed and a summary judgment motion filed). Where it appears that granting leave to amend is unlikely to be productive or the amendment is futile, it is not an abuse of discretion to deny leave to amend. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (citations omitted).

Generally, an amendment is futile if the pleading fails to state a claim or would otherwise be subject to dismissal. *Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, 103-104 (S.D.N.Y. 2010) (citing *inter alia Health Chem Corp. v. Baker*, 915 F.2d

8

805, 810 (2d Cir. 1990)) (failure to state a claim); *Yves Saint Laurent Parfums, S.A. v. Costco Wholesaler Corp.*, No. 07 Civ. 3214, 2010 WL 2593671, at *2 (S.D.N.Y. June 24, 2010) (leave to amend based on futility may be granted where the proposed amendment has "no colorable merit). The analysis is similar to that employed in a motion to dismiss. *Kassner v. 2nd Avenue Delicatessen, Inc.*, 496 F.3d 229, 244 (2d Cir. 2007); *Stetz v. Reeher Enterprises, Inc.*, 70 F. Supp. 2d 119, 121 (N.D.N.Y. 1999). The court must accept the asserted facts as true and construe them in the light most favorable to the amending party. *Id.* The complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). Plaintiff's factual allegations must also be sufficient to give the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*, 550 U.S. at 555 (citation omitted).

When amendments raise colorable claims, especially where they are based upon disputed facts, they should be allowed, and a comprehensive legal analysis deferred to subsequent motions to dismiss or for summary judgment. *Madison Fund, Inc. v. Denison Mines Ltd.*, 90 F.R.D. 89, 91 (S.D.N.Y. 1981); *EEOC v. Sage Realty Corp.*, 87 F.R.D. 365, 371-72 (S.D.N.Y. 1980); *WIXT Television, Inc. v. Meredith Corp.*, 506 F. Supp. 1003, 1010 (N.D.N.Y. 1980).

In the case of proposed amendments where a party is to be added, the Court

must also look to Rule 21 of the Federal Rules of Civil Procedure. *Bridgeport Music, Inc. v. Universal Music Group, Inc.*, 248 F.R.D. 408, 412 (S.D.N.Y. 2008) (citations omitted). Rule 21 states that the court may permit a party to be added to an action "at any time, on just terms." FED. R. CIV. P. 21. Rule 21 is "intended to permit the bringing in of a person, who through inadvertence, mistake or for some other reason, had not been made a party and whose presence as a party is later found necessary or desirable." *United States v. Commercial Bank of North America*, 31 F.R.D. 133, 135 (S.D.N.Y. 1962) (internal quotations omitted). Addition of parties under Rule 21 is guided by the same liberal standard as a motion to amend under Rule 15. *Bridgeport Music, Inc.*, 248 F.R.D. at 412; *Fair Housing Development Fund Corp. v. Burke*, 55 F.R.D. 414, 419 (E.D.N.Y. 1972). As with Rule 15 amendments, joinder pursuant to Rule 21 may be denied as futile if the proposed pleading would not withstand a motion to dismiss. *See Cortigiano v. Oceanview Manor Home for Adults*, 227 F.R.D. 194, 201-202 (E.D.N.Y. 2005) (citations omitted) (discussion of Rule 15(a) standards, including futility, as applied to Rule 21 motion to add parties).

**B.    Application**

Because plaintiff in this case cannot "substitute" the proposed new defendants in place of defendant Potter under Rule 25, the court will interpret plaintiff's request as a motion to amend to add new parties under Rules 15(a) and 21.[7] As a motion to amend, however, plaintiff's submission is not in the proper form. Plaintiff has not

---

[7] *Pro se* submissions are interpreted with the utmost liberality. *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005); *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999) (*per curiam*).

10

submitted a proposed amended complaint,[8] which asserts how the proposed new defendants were personally involved in the alleged constitutional violation. Personal involvement is a prerequisite to the assessment of damages in a section 1983 case. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003).

There is no allegation that Superintendent Rock was involved with plaintiff's disciplinary hearings. The same is true for the Deputy Superintendent "John Doe." The only individual who appears to have been involved in plaintiff's disciplinary hearings is Lieutenant Sawyer. The court knows this only after reviewing the documents that defense counsel filed as "objections" to Judge Di Bianco's Report-Recommendation.[9] Even if plaintiff had moved properly to add Lieutenant Sawyer, this court finds that the amendment would be futile.

Plaintiff's current amended complaint alleges that, as the result of one incident on August 17, 2007, he was given two misbehavior reports and was "denied his Procedural rights to Due Process when he was subjected . . . to a [sic] Tier II and Tier

---

[8] Submission of a proposed amended complaint is required by the Local Rules of the Northern District of New York. *See* LOCAL RULES N.D.N.Y. 7(a)(4).

[9] These documents were served on plaintiff on November 28, 2008. (Dkt. No. 21-4. Certificate of Service). The court notes that exhibits attached to defendant's "objections" would constitute much of the discovery materials relevant to this case because they include copies of the documents related to the disciplinary hearings at issue in this case. Although the court does not base its decision on the "delay" factor of the standard for amendment of pleadings, it is clear that plaintiff knew as of late November or early December 2008, that Lieutenant Sawyer was the hearing officer in plaintiff's Tier II hearing. Plaintiff had stated inaccurately in his earlier submission, that defendant Potter was the hearing officer for both hearings. Based on the documents submitted by defense counsel in his objections, and after Senior Judge Scullin acted on the Report-Recommendation in late April, 2009, plaintiff could have moved to amend his complaint at that time instead of waiting until more than one year later, after the death of defendant Potter.

11

III Disciplinary Hearings and sanctions that arose out of the same . . . incident." (Am. Compl. at p.6).[10] Plaintiff lists three "Causes of Action," related to this conduct. *Id.* Only two of the three are actually "Causes of Action." The first "Cause of Action" alleges a violation of due process, and the second, alleges a violation of the Eighth Amendment. *Id.* The third "Cause of Action" merely alleges that the sanction of 360 days in SHU imposed by defendant Potter amounted to an "atypical and significant" deprivation, sufficient to establish a liberty interest protected by "due process." This third paragraph does not raise a separate cause of action because the establishment of a "liberty interest" is only the first step in a due process claim. *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001).

Based on the documents submitted by defense counsel as objections to Judge Di Bianco's Report-Recommendation, it is clear that Lieutenant Sawyer was the hearing officer for plaintiff's Tier II hearing. According to plaintiff's amended complaint, the only sanctions plaintiff suffered as the result of the Tier II hearing were 30 days cell confinement and 30 days loss of various privileges. (Am. Compl. at p.5).

In order to begin a due process analysis, the court must determine whether plaintiff had a protected liberty interest in remaining free from the confinement that he challenges and then determine whether the defendant deprived plaintiff of that liberty interest without due process. *Giano v. Selsky*, 238 F.3d at 225; *Bedoya v. Coughlin*, 91

---

[10] Plaintiff has inserted a blank page in the middle of his Form-Complaint on which he has written his "Statement of Facts" and "Procedural History." This court will, therefore, cite to the pages of the complaint as assigned by the court's Case Management and Electronic Case Filing (CM/ECF) system.

F.3d 349, 351 (2d Cir. 1996).  In *Sandin v. Conner*, the Supreme Court held that although states may still create liberty interests protected by due process,[11] "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force ..., nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995).  In the context of a summary judgment motion, the *Sandin* court rejected a claim that thirty days in segregated confinement was "atypical and significant." *Id.* at 486.

The sanction that Lieutenant Sawyer imposed on plaintiff was 30 days confinement to his own cell, together with some loss of privileges for 30 days.  A 30-day confinement, particularly confinement to one's own cell, absent additional egregious circumstances is insufficient to establish a liberty interest, protected by due process. *See Sealey v. Giltner*, 197 F.3d 578, 589-90 (2d Cir. 1999) (101 days in normal SHU conditions were not atypical and significant).  The federal district courts in New York, applying *Sandin*, have been consistent in holding that terms of SHU or "keeplock"[12] of approximately 30 days, and the related loss of privileges, do not

---

[11] "[T]he prevailing view is that by its regulatory scheme New York State has created a liberty interest in remaining free from disciplinary confinement, thus satisfying the first *Sandin* factor (citations omitted)." *Thompson v. LaClair*, 9:08-CV-037, 2009 WL 2762164 at *4 (N.D.N.Y. Aug. 25, 2009).

[12] "Keeplock" is confinement to one's own cell. *Gittens v. LeFevre*, 891 F.2d 38, 39 (2d Cir. 1989).  This is would be an even less "atypical" type of confinement than being placed in a special housing unit for 30 days.

13

implicate a liberty interest protected by the Due Process clause, even in the absence of detailed factual development regarding the conditions of confinement. *See, e.g., Carl v. Dirie*, No. 9:09-CV-724, 2010 WL 3338566 at *6-7 (N.D.N.Y. March 29, 2010) (granting motion to dismiss where plaintiff spent 30 days in SHU, but did not allege any additional aggravating circumstances present during the period of confinement); *Thompson v. LaClair*, No. 9:08-CV-37, 2009 WL 2762164, at *5-6 (N.D.N.Y. Aug. 25, 2009) (finding, on the pleadings, no liberty interest in 30-day confinement with loss of privileges); *Ochoa v. DeSimone*, No. 9:06-CV-119, 2008 WL 4517806, at *4 (N.D.N.Y. Sept. 30, 2008) (summary judgment).

Even if the discipline imposed implicated a liberty interest, plaintiff does not allege any due process violation. Other than claiming that he was charged in two hearings for one incident, plaintiff does not cite any other alleged deficiency in the Tier II hearing. Plaintiff's attempt to amend his complaint to add Lieutenant Sawyer in order to challenge his Tier II hearing, would not withstand a motion to dismiss.[13] Thus, to the extent that plaintiff's submission can be interpreted as a motion to amend to add Lieutenant Sawyer as a separate defendant, it must be denied.

## IV.   *Sua Sponte* Dismissal

Generally, the court would afford plaintiff the opportunity to substitute the

---

[13] Plaintiff also claims a violation of the Eighth Amendment as a result of the two disciplinary hearings, however, an Eighth Amendment violation requires conditions of confinement that impose an excessive risk to the inmates health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). In this case, there is no indication that confinement to plaintiff's own cell for 30 days would have caused plaintiff any risk to his health or safety. Thus, no Eighth Amendment violation is stated with respect to the Tier II disposition.

appropriate estate representative for defendant Potter.[14]  However, this court has determined that it would be futile to do so.  Even if plaintiff were to properly substitute defendant Potter's estate, plaintiff does not state a claim for relief.

### A. Legal Standard

Plaintiff is proceeding *in forma pauperis* in this action.  Under 28 U.S.C. § 1915(e)(2)(B)(ii), the court has the authority to dismiss an action brought *in forma pauperis* by an inmate at any time if the court determines that the action is "frivolous or malicious[,] . . . fails to state a claim on which relief may be granted[,] . . . or . . . seeks monetary relief against a defendant who is immune from such relief."  In this case, the basis of plaintiff's due process claim is that he should not have had two disciplinary hearings related to the same conduct.

Plaintiff received twelve months SHU confinement as a result of the Tier III hearing. (Am. Compl. at p.5).  Twelve months (365 days) confinement would suffice to establish a liberty interest, requiring due process protection. *See Colon v. Howard*, 215 F.3d 227, 231 (2d Cir.2000) (finding that a prisoner's liberty interest was infringed by 305-day confinement).  In *Wolff v. McDonnell*, 418 U.S. 539, 563-64 (1974), the Supreme Court held that due process requires advance notice of the charges against the inmate, and a written statement of reasons for the disposition.  The inmate should also have the ability to call witnesses and present documentary evidence, subject to legitimate safety and correctional goals of the institution.  *Id.*

---

[14] As stated above, based upon the date of the suggestion of death, plaintiff would have until October 7, 2010 within which to substitute the appropriate party.

15

Finally, the inmate is entitled to a fair and impartial hearing officer, and the hearing disposition must be supported by "some" or "a modicum" of evidence. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985)(some evidence standard); *McCann*, 698 F.2d at 121-22 (fair and impartial hearing officer). Plaintiff alleges no deficiencies in the Tier III hearing, relating to the rights described in *Wolff*.

Plaintiff's claim could be interpreted as a "double jeopardy" claim. The Double Jeopardy Clause is limited to proceedings that are "essentially criminal." *Breed v. Jones*, 421 U.S. 519, 528 (1975). It is well-settled that prison disciplinary hearings are not considered part of a criminal prosecution, and that they do not implicate the Double Jeopardy Clause. *See Porter v. Selsky*, 287 F. Supp. 2d 180, 190-91 (W.D.N.Y. 2003) (discussing cases); *Nimmons v. Schult*, No. 9:07-CV-927, 2008 WL 5056744, at *3 (N.D.N.Y. Nov. 24, 2008) (citing *inter alia Wolff v. McDonnell*, 418 U.S. at 556 and *Breed v. Jones*, *supra* and discussing cases). In *Porter v. Selsky*, the court denied the inmate's motion for reconsideration of its prior ruling that prison officials could impose their own penalty for a prison disciplinary rule violation, originating from the *same conduct* for which the inmate was found guilty in a criminal prosecution, without violating the inmate's right to be free from double jeopardy. 287 F. Supp. 2d at 188-91.

### B.    Application

In this case, plaintiff claims *only* that he should not have had two separate hearings based on the same conduct. Because plaintiff complains only about prison disciplinary hearings, the Double Jeopardy Clause does not afford him any protection.

16

Additionally, a review of plaintiff's complaint shows that, although he had two separate hearings, the charges at each hearing were different.[15] Plaintiff states that the Tier II hearing involved the following charges:

1. Rule 100.13 - An Inmate Shall Not Engage in Fighting.
2. Rule 104.11 - An Inmate Shall Not Engage in Violent Conduct.
3. Rule 104.13 - An Inmate Shall Not Engage in Conduct Which Disturbs the Order of the Facility.

(Am. Compl. at p.5). Plaintiff states that he was found guilty only of the first and third charges. *Id.* The Tier III hearing involved the following charges:

1. Rule 106.10 - Violating a Direct Order
2. Rule 113.10 - Weapon
3. Rule 115.10 - Frisk Procedures
4. Rule 100.11 - Attempted Staff Assault

(Am. Compl. at p.5). Plaintiff states that he was found guilty of all the violations, charged in the Tier III hearing. *Id.* A review of the charges of which plaintiff was found guilty shows that none are the same. Plaintiff admits that he was found not guilty of the Tier II violation of engaging in violent conduct, but was found guilty of the Attempted Staff Assault after the Tier III hearing. Arguably, the violent conduct charge and the fighting charge could have been similar, but plaintiff was found not guilty of one of the charges.

The fact that plaintiff had two separate hearings regarding the same incident does not mean that he was charged or punished twice for the same conduct, only that

---

[15] The court suspects that this is the case because the Tier II violations were not as serious as the Tier III violations and were handled separately for that reason.

he was punished for several different violations arising from one incident.[16] This does not rise to the level of a constitutional violation. In fact, plaintiff's own statement of facts shows that he was not punished twice for the same charge.[17]

This court finds that plaintiff's amended complaint does not state a claim for relief. The court is recommending *sua sponte* dismissal of the amended complaint in its entirety as against defendant Potter, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). To the extent that plaintiff's motions can be read as motions to amend the amended complaint to add different defendants in addition to defendant Potter, I recommend that the motions be denied as futile.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's letter-motion to "substitute" David Rock as a defendant (Dkt. No. 45) is **DENIED**, and it is

**RECOMMENDED**, that plaintiff's letter-motion to amend his amended complaint to add Lieutenant Sawyer and a "John Doe" Deputy Superintendent (Dkt. No. 46) be **DENIED**, and it is

**RECOMMENDED**, that the amended complaint (Dkt. No. 34) be

---

[16] Even in a criminal prosecution, multiple violations arising out of a single transaction may be charged and tried separately without violating double jeopardy. *See e.g. United States v. Blackshear*, 313 Fed. Appx. 338, 345 (2d Cir. 2008).

[17] A review of defense counsel's exhibits shows that the plaintiff's sanctions from the Tier II hearing and the Tier III hearing were served concurrently; thus, there is no indication that plaintiff spent any extra time confined as a result of the two hearings. The exhibits show that the Tier II sanction was to be served from August 23, 2007 until September 16, 2007 (plaintiff only had twenty four days left of his 30-day sanction after the Tier II hearing), and the Tier III SHU time was to be served from August 23, 2007 until August 23, 2008. (Dkt. No. 21-1 at 1; Tier II sanction); (Dkt. No. 21-2 at 3; Tier III sanction).

**DISMISSED IN ITS ENTIRETY WITH PREJUDICE** for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

Dated: September 21, 2010

*[signature]*
Hon. Andrew T. Baxter
U.S. Magistrate Judge